IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DENNIS THOMPSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 13-CV-333-NJR-DGW |
| | ) |
| JOHN TOURVILLE and | ) |
| KIMBERLEY CRISS, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff, Dennis Thompson, is an inmate in the custody of the Illinois Department of Corrections at Menard Correctional Center ("Menard"). He filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging that Defendants Kimberley Criss, a nurse practitioner, and John Tourville, a correctional officer, violated his constitutional rights. More specifically, Plaintiff alleges that he was improperly single-cuffed by Defendant Tourville, which resulted in injuries that Defendant Criss subsequently failed to adequately treat. Plaintiff also alleges that Defendant Tourville retaliated against him for filing grievances by placing his legal documents in plain view of staff and other inmates.

This matter is currently before the Court on the Motion for Summary Judgment filed by Defendant Criss on August 11, 2014 (Doc. 107) and the Motion for Summary Judgment filed by Defendant Tourville on September 10, 2014 (Doc. 120). Plaintiff filed a timely response to Defendant Criss's Motion (Docs. 117 and 118), as well as Defendant

Tourville's motion (Doc. 139).[1] The Court has carefully considered the briefs and all of the evidence submitted by the parties, and for the reasons set forth below, both motions are granted.

**FACTUAL BACKGROUND**

On June 3, 2012, while Plaintiff's housing unit was proceeding to lunch, a disturbance occurred in a different housing unit (Doc. 121-1, pp. 10-11). Due to the disturbance and pursuant to standard prison protocol, Plaintiff and the other inmates in his housing unit were ordered to get on the ground (*Id.* at p. 11). Approximately three officers, including Defendant Tourville, stayed and monitored Plaintiff's housing unit while the disturbance was addressed by other officers (*Id.* at pp. 17-18). An emergency lockdown was instituted, which required all inmates to be secured and escorted back to their housing unit (*Id.* at p. 20; Doc. 121-2, p. 1). Accordingly, the officers retrieved handcuffs to secure all of the inmates (Doc. 121-1, p. 19).

Plaintiff has a multi-cuff permit ("MCP"), which means that more than one set of handcuffs should be used to cuff him. It was issued by a medical staff member because he suffers from osteoarthritis of his spine and degenerative joint disease (Doc. 121-1, p. 24-25; *see* Doc. 117, pp. 4-5, 10, 14, 19). According to institutional policy, an inmate who presents his MCP at the time of cuffing will be cuffed according to the approved deviation (Doc. 121-2, pp. 1-2); however, an inmate who does not present his MCP at the time of cuffing will be cuffed using only one pair of handcuffs (Doc. 121-2, p. 2). As such,

---

[1] Plaintiff filed a Response to Defendant Tourville's Motion for Summary Judgment on September 18, 2014 (Doc. 124). With leave of Court, he then filed an Amended Response (Doc. 132) and a Second Amended Response (Doc. 139). Accordingly, the Court considers Plaintiff's Second Amended Response (Doc. 139) as the operative response to Defendant Tourville's Motion.

inmates with MCPs are expected to carry their permits with them at all times (Doc. 121-2, p. 1).

Plaintiff asserts that Defendant Tourville approached him and motioned for him to cuff up (Doc. 121-1, p. 24). Plaintiff conveyed to Tourville that he had an MCP (*Id.* at pp. 24, 31). But Tourville did not ask to see it, and Plaintiff claims that Tourville did not give him an opportunity to show it (*Id.* at pp. 24–25, 31). Instead, Tourville told Plaintiff that he was just taking him "right back into the cell house," while simultaneously grabbing Plaintiff's arms and proceeding to single cuff Plaintiff (*Id.* at pp. 24-25). Plaintiff was made to wait approximately twenty to twenty-five minutes before he was ultimately un-cuffed (*Id.* at p. 27). At no point did Plaintiff explain his medical condition to Tourville, complain of pain, or attempt to have Tourville retrieve his permit (*see id.* at pp. 34–35).

As a result of being single-cuffed, Plaintiff contends that he aggravated his pre-existing medical conditions, including his well-documented osteoarthritis and degenerative joint disease (Doc. 121-1, pp. 44, 59-60). Plaintiff submitted a sick call request seeking medical attention for his neck and shoulder immediately following the incident (*Id.* at p. 57). Plaintiff wrote the request out as an emergency and indicated that he was in extreme pain and suffering from severe muscle spasms (*Id.* at pp. 59-60).

Four days later, on June 7, 2012, Plaintiff was seen by Defendant Criss (Doc. 121-1, p. 52; Doc. 107-1, p. 1). This appointment was a follow-up examination for a chronically infected cyst; it was not to address Plaintiff's sick call request following the cuffing incident (Doc. 107-1; Doc. 107-4, p. 1). Nevertheless, Criss noted in Plaintiff's medical

records that he complained his neck and shoulder were re-injured because he had been single-cuffed (Doc. 107-4, p. 1). She prescribed Plaintiff an antibiotic for his infected cyst and also provided him twenty-four 200 milligram dosages of Motrin (*Id.* at p. 2).

As Plaintiff tells it, Criss refused to provide any treatment for his neck and shoulder pain (Doc. 121-1, pp. 64, 98). He claims that during the examination his neck was in "excruciating" pain and his shoulder was pounding (*Id.* at p. 64). He further claims that his pain was obvious as he was grimacing when he was speaking and could not move his right arm (*Id.*). But Criss told Plaintiff that she was not there to treat him for his neck and shoulder complaints because this appointment was scheduled to address his cyst and, pursuant to institutional policy at that time, an inmate was to be treated for only the condition he was scheduled to be seen for unless the inmate had an emergent medical condition (*Id.*; Doc. 107-1, p. 3). Criss specifically indicated that the Motrin was intended to treat only residual pain related to his infected cyst (Doc. 121-1, pp. 65-66). According to Plaintiff, Criss was also well-aware that his chronic pain required a higher dosage of Motrin than the one she prescribed, and his muscle spasms required prescription muscle relaxers (*Id.* at p. 66).

Defendant Criss tells a different story. According to her, Plaintiff did not appear to be in any apparent physical distress (Doc. 107-4, p. 2). And he did not convey that he was in excruciating pain or suffering from a pinched nerve, muscle spasms, or the inability to move his neck and arms (*Id.*). She further contends that Plaintiff did not inform her that he had run out of muscle relaxant or pain reliever, nor did he request any such medication (*Id.*). As such, based on her skill, expertise, knowledge, and

observations, Criss asserts that it was not apparent that Plaintiff was experiencing a medical emergency or urgent medical condition (*Id.* at pp. 2-3). She also contends that Motrin is an acceptable treatment for complaints of muscle pain and inflammation and, as such, the twenty-four doses of Motrin could have alleviated Plaintiff's neck and shoulder discomfort (*Id.* at p. 3).

The day after Plaintiff was examined by Defendant Criss, he was seen by a certified medical technician to address the complaints he made in his sick call request after the cuffing incident (Doc. 107-1, p. 3; Doc. 121-1, p. 62). At this appointment, Plaintiff indicated he had a pinched nerve in his neck that was aggravated due to being single-cuffed behind his back (Doc. 107-4, p. 2). The med tech referred Plaintiff to a physician (*Id.*). Six days later, Plaintiff was examined by Dr. Nwaobasi (*Id.*). Dr. Nwaobasi diagnosed Plaintiff with cervical muscle spasms in his neck, and he prescribed 400 milligrams of Motrin and 500 milligrams of Robaxin, a muscle relaxant, for four months (*Id.*; Doc. 121-1, pp. 73-74, 106). Dr. Nwaobasi also issued Plaintiff a front-cuff permit (Doc. 107-4, p. 3; Doc. 121-1, p. 73).

At his deposition, Plaintiff testified that he experienced muscle spasms for approximately three and one-half to four months after the cuffing incident (Doc. 121-1, pp. 88-89). Plaintiff also testified that he suffered irreparable psychological damage and was made to suffer in excruciating pain for seven days after his appointment with Defendant Criss until he was examined by Dr. Nwaobasi (*Id.* at p. 85).

In December 2012, months after the cuffing incident, Plaintiff put a rough draft of a memorandum he was writing for a pending lawsuit in an empty toilet paper wrapper,

which he placed in the bars of his cell so that it could be discarded (Doc. 121-1, pp. 119, 120, 121, 128). This is the typical procedure inmates use to throw away their garbage as they do not have trash receptacles in their cells (*Id.* at p. 127). Inmate gallery workers typically come through and pick up the trash left in the cell bars (*Id.*).

When Plaintiff left his housing unit for breakfast, his discarded work had not yet been collected; however, when Plaintiff returned approximately twelve or fifteen minutes later, he saw his legal paperwork spread out on the sergeant's desk in plain view of gallery inmates and staff (Doc. 121-1, at pp. 131-32). Defendant Tourville admits that he took the documents from the bars of Plaintiff's cell and put them on the sergeant's desk (Doc. 121-2, p. 2). He contends that he did so because he felt the documents inside the toilet paper tube were suspicious (*Id.*). According to Tourville, institutional policy prescribes that correctional officers investigate suspicious items found in the bars of an inmate's cell in order to intercept contraband and unapproved communication between inmates (*Id.*). After reviewing Plaintiff's legal documents, Tourville determined that they were not contraband, and he threw them in the trash (*Id.*). Tourville asserts that there was no other motivation for placing Plaintiff's legal documents on the sergeant's desk, and it was not intended to be a punishment (*Id.*).

Plaintiff contends, however, that Defendant Tourville took his legal documents and spread them out on the desk in order to retaliate against him for the grievance that Plaintiff filed against Tourville after the cuffing incident (Doc. 121-1, p. 142-43, 150). Plaintiff avers that Defendant Tourville knew that he filed the grievance because both the counselor and grievance officer's responses indicated that staff had been contacted

regarding the cuffing incident (*Id.* at 156; *see* Doc. 1, p. 12). Plaintiff contends that the documents remained on the sergeant's desk for approximately three hours, even though it should have been apparent long before that that they were not contraband (Doc. 121-1, p. 139–40, 144). Following this incident, other officers made remarks that indicated they had read his legal materials (*See id.* at pp. 150-54), however, Plaintiff never specifically saw any officers read his legal documents (*Id.* at p. 149).

## DISCUSSION

### A. Legal Standard for Summary Judgment

The standard applied to summary judgment motions under Federal Rule of Civil Procedure 56 is well-settled and has been succinctly stated as follows:

> Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether a genuine issue of material fact exists, [the Court] must view the record in a light most favorable to the nonmoving party. Because the primary purpose of summary judgment is to isolate and dispose of factually unsupported claims, the nonmovant may not rest on the pleadings but must respond, with affidavits or otherwise, setting forth specific facts showing that there is a genuine issue for trial . . . . A mere scintilla of evidence in support of the nonmovant's position is insufficient; a party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion.

*Albiero v. City of Kankakee*, 246 F.3d 927, 931-32 (7th Cir. 2001) (citations and quotations omitted). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).

### B. Count 1: Excessive Force against Defendant Tourville

Plaintiff contends that Defendant Tourville used excessive force when he refused to honor Plaintiff's multi-cuff permit and single-cuffed him on June 3, 2012. "The Eighth Amendment's Cruel and Unusual Punishments Clause prohibits the 'unnecessary and wanton infliction of pain' on prisoners." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)). But "not every 'malevolent touch by a prison guard' gives rise to a federal cause of action, even if the use of force in question 'may later seem unnecessary in the peace of a judge's chambers.'" *Outlaw*, 259 F.3d at 838 (quoting *Hudson*, 503 U.S. at 9). "The use of *de minimis* force, so long as it 'is not of a sort repugnant to the conscience of mankind,' is not of Eighth Amendment concern." *Lewis v. Downey*, 581 F.3d 467, 475 (7th Cir. 2009) (quoting *Hudson*, 503 U.S. at 9–10). If the force was more than *de minimis,* the core judicial inquiry is whether it "was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Lewis*, 581 F.3d 467 (quoting *Hudson*, 503 U.S. at 7) (internal quotation marks omitted).

In this case, the force that Tourville used was *de minimis*. According to Plaintiff, Tourville "grabbed one arm and . . . had a hold of one arm to bring the other back," then "pushed [Plaintiff's] hands together," and put a single pair of handcuffs onto his wrists. (Doc. 121-1, p. 26). Plaintiff admits that "it was a pretty typical cuffing procedure" and Tourville "wasn't violent" (*Id.*). Based on Plaintiff's own portrayal of Tourville's actions, no reasonable jury could find that the force used was "repugnant to the conscience of mankind."

Additionally, there is no evidence that Tourville was acting maliciously or sadistically in order to cause harm. The evidence demonstrates that there was a penological purpose for Tourville's actions—he was handcuffing Plaintiff because the institution had been put on a level one lockdown, and all inmate movement was required to be conducted in handcuffs. There is also no indication that Tourville knew about Plaintiff's medical condition and therefore was aware that using a single set of handcuffs would cause Plaintiff pain or injury even though it is not harmful to a typical individual. At most, the record shows that Tourville knew that Plaintiff had a multi-cuff permit. But handcuff permits can be issued for a variety of reasons.[2] So this fact alone, without any further knowledge as to why the permit was issued, is insufficient to permit the inference that Tourville single-cuffed Plaintiff in order to cause him harm.

In sum, while Defendant Tourville's conduct cannot be condoned, it does not amount to a constitutional violation. Accordingly, Tourville is entitled to summary judgment as a matter of law on Plaintiff's claim of excessive force.

**C. Counts 2 and 3: Deliberate Indifference Against Defendants Tourville and Criss**

Plaintiff contends that Defendant Tourville was deliberately indifferent to his medical condition when he disregarded Plaintiff's double-cuff permit and single-cuffed him on June 3, 2012. Plaintiff further contends that Defendant Criss was also deliberately indifferent when she denied and delayed treatment for his injuries that resulted from the cuffing incident.

In order to prevail on a claim for deliberate indifference to a serious medical need,

---

[2] *See, e.g., O'Quinn v. Gaetz*, Case No. 13-cv-1342-JPG-PMF, 2014 WL 3409120 (S.D. Ill. July 14, 2014) (special cuff permit indicated that Plaintiff should be cuffed in front so that he could lift his shirt to receive his insulin shots).

there are "two high hurdles, which every inmate-plaintiff must clear." *Dunigan ex rel. Nyman v. Winnebago County*, 165 F.3d 587, 590 (7th Cir. 1999). First, the plaintiff must demonstrate that his medical condition was "objectively, sufficiently serious." *Greeno v. Daley*, 414 F.3d 645, 652-653 (7th Cir. 2005) (citations and quotation marks omitted). Second, the plaintiff must demonstrate that the "prison officials acted with a sufficiently culpable state of mind," namely deliberate indifference. *Id.* at 653.

Neither Defendant Tourville nor Defendant Criss contest the first prong of the deliberate indifference analysis—a serious medical condition (*See* Docs. 107, 121). Thus, the issue presented by the summary judgment motions is whether the Defendants were deliberately indifferent to Plaintiff's serious medical need.

Deliberate indifference "requires more than negligence and it approaches intentional wrongdoing." *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012); *accord Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) ("Deliberate indifference is intentional or reckless conduct, not mere negligence."); *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) ("[N]egligence, even gross negligence does not violate the Constitution.") A prison official acts with deliberate indifference if they know of a serious risk to the prisoner's health and consciously disregard that risk. *Holloway*, 700 F.3d at 1073. Put differently, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and "must also draw the inference." *Greeno*, 414 F.3d at 653 (citation omitted).

### 1. Defendant Tourville

Tourville first argues that he is entitled to summary judgment because Plaintiff

cannot show that his neck and shoulder pain was caused by Tourville's actions. Tourville is correct that demonstrating the purported constitutional violation caused an injury or damages is an essential element of a § 1983 claim. *Harris v. Kuba*, 486 F.3d 1010, 1014 (7th Cir. 2007) (citing *Berman v. Young*, 291 F.3d 976, 982 (7th Cir. 2002)). In viewing all of the evidence in a light most favorable to Plaintiff, however, a reasonable jury could certainly find that Tourville's actions exacerbated the pain and muscle spasms that Plaintiff suffered as a result of his chronic and progressive medical condition. Such a finding is sufficient to establish causation.

  Tourville next argues that there is no evidence that he appreciated the risk of harm created by single-cuffing Plaintiff behind his back for the amount of time it would take to escort him back into his cell house. This argument has substantially more merit than the first. As previously discussed with respect to Plaintiff's excessive force claim, Plaintiff did not present any evidence that he told Tourville, or that Tourville otherwise knew, about his medical condition. And while Tourville knew that Plaintiff had a multi-cuff permit, there is no evidence that Tourville knew that it had been issued because of Plaintiff's medical condition. As such, Tourville did not know enough to draw the inference that Plaintiff would suffer serious injury or pain from being single-cuffed for a brief period of time.

  The Court is mindful that a medical permit, such as the multi-cuff permit in this case, is not issued in vain and is an extension of a medical order. Generally, such orders are expected to be followed and carried out by prison officials. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (holding that deliberate indifference is manifested by prison

guards "intentionally interfering with the treatment once prescribed"). But in this instance, Tourville's deviation from the multi-cuff permit does not establish deliberate indifference because, again, there is no indication that he knew Plaintiff might suffer serious injury or pain from being single cuffed. *See Zentmeyer v. Kendall Cnty, Ill.*, 200 F.3d 805, 811–12 (7th Cir. 2000) (jail guards who failed to administer doses of prescription medication were not deliberately indifferent because they did not know serious consequences might result from their lack of diligence in treating an earache).

In sum, single-cuffing Plaintiff in contravention of his medical permit was negligent and perhaps incompetent, but the record does not permit the conclusion that Tourville consciously disregarded the permit in the face of known medical risks. Accordingly, Tourville is entitled to summary judgment on Plaintiff's claim of deliberate indifference.

### 2. Defendant Criss

The undisputed facts show that, on June 7, 2014, Plaintiff was seen by Defendant Criss for a follow-up visit for his chronically infected cyst. At that visit, he complained that he was improperly cuffed four days earlier and was experiencing neck and shoulder pain, which Criss documented. She counseled him to always carry his permit, and she also provided him with twenty-four 200 milligram doses of Motrin. According to Plaintiff, this course of treatment was inadequate. He claims that he told Criss that he was in "excruciating" pain, his shoulder was pounding, and he could not move his right arm. Therefore, he contends that he should have been given muscle relaxers and a higher dose of Motrin because the dosage that he received was insufficient to treat his pain for

any significant amount of time.

The heart of Plaintiff's claim against Defendant Criss is that she pursued a course of treatment that she knew would not alleviate his symptoms. Even accepting Plaintiff's story as true, however, no reasonable juror could find that Criss was deliberately indifferent to Plaintiff's pain. One look at the medical records demonstrates that Criss's decision to give Plaintiff 200 mg of Motrin cannot be considered so far afield from an appropriate medical response as to demonstrate a complete abandonment of medical judgment. *King v. Kramer*, 680 F.3d 1013, 1018-19 (7th Cir. 2012) ("A medical professional's deliberate indifference may be inferred when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment.") (citation and internal quotation marks omitted).

The records plainly show that Plaintiff was routinely given 400 mg of Motrin over the course of the previous two years for his shoulder and neck pain (Doc. 117, pp. 10–23).[3] Additionally, he was not always given muscle relaxers and, in this instance, there is no evidence that Plaintiff asked for them (*Id.*; *see* Doc. 107-4, p. 2). Seven days after Plaintiff saw Criss, Dr. Nwaobasi determined that Plaintiff actually needed 400 mg of Motrin as well as muscle relaxers (Doc. 107-4, p. 3). At the very most, this evidence demonstrates that perhaps Criss misjudged and underestimated the intensity of Plaintiff's pain. But a quibble over 200 milligrams of over-the-counter pain reliever (Criss gave Plaintiff 200 milligrams, and he thought he should have been given 400

---

[3] The most he was ever given was 800 mg of Motrin, which was on one occasion in July 2010 (Doc. 117, p. 10).

milligrams) cannot possibly constitute deliberate indifference. It amounts to nothing more than negligence. *Cf. Walker v. Benjamin*, 293 F.3d 1030, 1039 (7th Cir. 2002) (deliberate indifference where inmate was prescribed a "powerful narcotic-based painkiller" following emergency surgery for a severe infection but nurse gave him nothing); *Sherrod v. Lingle,* 223 F.3d 605, 611–12 (7th Cir. 2000) (deliberate indifference where inmate needed an appendectomy but received only an enema and aspirin).

Based on the foregoing, the Court finds that Defendant Criss is entitled to summary judgment on Plaintiff's claim of deliberate indifference.

### D. Count 4: Retaliation against Defendant Tourville

Plaintiff claims that Defendant Tourville retaliated against him for filing a grievance by taking and publicizing his legal documents in violation of the First Amendment. At the summary judgment stage, the prisoner has the initial burden to make out a prima facie case of retaliation by showing that that he engaged in speech protected by the First Amendment, he suffered a deprivation likely to deter future protected activity, and the protected activity was at least a substantial or motivating factor in the defendants' actions. *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014) (citing *Thayer v. Chiczewski,* 705 F.3d 237, 251 (7th Cir. 2012).

Here, Plaintiff engaged in First Amendment activity when he submitted a grievance against Tourville regarding the cuffing incident. *Watkins v. Kasper*, 599 F.3d 791, 798 (7th Cir. 2010). The Court is dubious, however, that Plaintiff suffered a deprivation likely to deter future protected activity. It seems highly unlikely that Plaintiff, or any inmate "of ordinary firmness," would stop filing grievances or

participating in litigation activities simply because a legal document was displayed for correctional officers to view. *Bart v. Telford*, 677 F.2d 622, 625 (1982). That is particularly true in this instance where the document—a rough draft of legal memorandum for Plaintiff's lawsuit that was pending against Dr. Nwaobasi—was presumably later filed with the court and became a matter of public record, at which point it became available for any and all prison officials to view.

But the Court need not make a definitive determination on whether Plaintiff suffered a deprivation likely to deter future protected activity because it is clear that Plaintiff has not established the third element of his prima facie case: that his protected activity was a motivating factor in Tourville's conduct. It is undisputed that Tourville knew about Plaintiff's grievance against him regarding the cuffing incident. Yet there is no evidence from which it can be inferred that Tourville confiscated Plaintiff's legal documents in order to retaliate against him for filing the grievance. For example, there was no suspicious timing—Tourville did not take Plaintiff's legal documents until over six months after Plaintiff filed his grievance. And Tourville did not make any comments to Plaintiff that implied he acted out of revenge (Doc. 121-1, pp. 125, 137–39, 150–55). Rather, the only evidence indicates that Tourville confiscated Plaintiff's legal documents in order to investigate them and ensure they were not contraband. Although Tourville did not dispose of the documents as quickly as Plaintiff would have liked, he ultimately threw them in the trash. Based on the evidence, Plaintiff's speculation regarding Defendant Tourville's retaliatory motive cannot overcome the Tourville's attestations to the contrary. *See Devbrow v. Gallegos*, 735 F.3d 584, 588 (7th Cir. 2013); *see also Springer v.*

*Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). Accordingly, the Court finds that Defendant Tourville is entitled to summary judgment as a matter of law on Plaintiff's retaliation claim.

## CONCLUSION

For the reasons set forth above, the Motion for Summary Judgment filed by Defendant Kimberley Criss (Doc. 106) is **GRANTED**, and the Motion for Summary Judgment filed by Defendant John Tourville (Doc. 120) is **GRANTED**. Plaintiff's claims against Defendants Kimberley Criss and John Tourville are **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants and against Plaintiff, and close this case on the Court's docket.

IT IS SO ORDERED.

DATED: March 30, 2015

> s/ Nancy J. Rosenstengel
> NANCY J. ROSENSTENGEL
> United States District Judge